**CHADBOURNE**
**& PARKE LLP**

Gerald D. Silver, Esq.
direct tel +1 212 408 5260
gsilver@chadbourne.com



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/1/11

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

July 1, 2011

BY FACSIMILE - (212) 805-6382

Honorable Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY 10007

Re: **Riviera Finance of Texas, Inc. v. Capgemini U.S. LLC, 10 Civ. 5489 (VM)**

Dear Judge Marrero:

We represent defendant Capgemini U.S. LLC ("Capgemini") in the above-referenced matter. Pursuant to your Honor's Order at the Status Conference held on June 17, 2011, Capgemini submits this letter (maximum of 3 pages) to demonstrate that there is no genuine dispute as to any material fact and that summary judgment should be awarded in Capgemini's favor and against plaintiff Riviera Finance of Texas, Inc. ("Riviera") dismissing this action.

**I. Introduction.** Riviera seeks to recover amounts it claims are due under an Agency Agreement dated October 1, 2007 (the "Agreement") between Capgemini and EC Manage, Inc. ("EC Manage"), as to which Riviera claims it is the assignee. However, EC Manage has indisputably breached the Agreement, causing damages to Capgemini in excess of $1.3 million. Indeed, Capgemini had commenced a prior action against EC Manage in this District, Capgemini U.S. LLC v. EC Manage, Inc., 10 Civ. 2486 (GBD)(HBP), in which the court has granted Capgemini's motion for a default judgment against EC Manage arising from such breach.

It is black letter New York law that Riviera, as assignee of EC Manage, stands in the shoes of EC Manage and has no more rights in the Agreement than EC Manage would. EC Manage materially breached the Agreement, causing damages to Capgemini. This breach is well established by Capgemini witnesses, documents and EC Manage's admissions. Riviera does not and cannot dispute that this breach occurred because, among other reasons, it has no personal knowledge as to whether EC Manage performed or not (Ozenne Tr. 14-15, 35, 39, 41-45, 47, 50) (Riviera's corporate representative). Because of EC Manage's breach (and Capgemini's right of set-off), Capgemini has no further obligation as a matter of law to make any further payments under the Agreement, whether to EC Manage or its assignee Riviera.

**II. Brief Summary Of Relevant Undisputed Facts.** Pursuant to the Agreement, EC Manage would provide consultants to Capgemini to provide technology consulting services on Capgemini's client engagements. Capgemini would pay EC Manage for the time and expenses of the consultants (Agreement Art. 3) and, in turn, EC Manage was required to "timely pay the wages of Consultants from [EC Manage's] own accounts" (Agreement Art. 7). EC Manage also

# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero -2- July 1, 2011

agreed to indemnify Capgemini from all claims or losses arising from EC Manage's breach or which relate to compensation due to consultants (Agreement Art. 11).

On or about October 2, 2009, Riviera and EC Manage entered into an agreement pursuant to which EC Manage agreed to factor or assign to Riviera certain of its accounts receivable in connection with the services it provided to Capgemini (the "Factoring Agreement"). Riviera and EC Manage supplied Capgemini with a Notice of Assignment to Capgemini effective for all payments made on or after October 2, 2009, pursuant to the Uniform Commercial Code ("UCC").

Accordingly, Capgemini began making payments directly to Riviera. Several weeks later, however, starting in or about late October 2009, consultants staffed on Capgemini matters by EC Manage began complaining to Capgemini management and clients that they were not receiving payments from EC Manage for services the consultants rendered -- and for which Capgemini had paid EC Manage and/or Riviera -- dating as far back as June 2009.

Capgemini thereafter began investigating the issue. EC Manage eventually admitted that it had not been paying the consultants. Capgemini demanded that EC Manage agree for the consultants to be transferred to another staffing agency, and that EC Manage reaffirm its obligation to pay the consultants. EC Manage agreed to do so in a letter agreement dated December 2, 2009 providing, in pertinent part: "<u>Due to EC Manage's failure to make prompt payment to some of Capgemini's resources</u>, EC Manage agrees to release the resources listed" (emphasis added).

However, EC Manage continued to fail to pay the consultants. As a result, these consultants continued to voice complaints to Capgemini's clients, endangering Capgemini's client relationships and reputation. Some consultants threatened to walk away from Capgemini's client engagements, and at least one consultant abruptly ceased providing services, causing clients to begin inquiring about the situation. The loss of these individuals and their respective knowledge would have been extremely detrimental to Capgemini and its clients. Accordingly, Capgemini had little choice but to begin mitigating its damages by undertaking a process to pay former EC Manage consultants who were working on Capgemini clients directly for their services -- despite the fact that Capgemini had already paid EC Manage and/or Riviera for such consultants' services. To date, Capgemini has expended $1,338,852.10.

Capgemini ceased making payments to EC Manage and/or Riviera, as EC Manage had breached its obligation to timely pay the consultants working on Capgemini accounts. Thereafter, Riviera commenced this action seeking to recover damages in the amount of $442,855.42, asserting claims of breach of contract, book account and unjust enrichment.

**III. Summary Judgment Should Be Awarded Dismissing Riviera's Claims.** "[A]n assignee is subject to any claims and defenses arising under an assigned contract." <u>Ford Motor Credit Company v. Sofia</u>, 147 Misc. 2d 651, 654, 559 N.Y.S.2d 109, 111 (Civ. Ct. Kings Cty. 1990) ("<u>Ford Motor</u>"). "[I]t is established that where the claim against the assignee is related to the

# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero           -3-           July 1, 2011

transaction out of which the assignment arose and even if the claim accrues after notice of the assignment, a defendant may interpose it against the assignee to the extent of an offset." Ford Motor, 147 Misc. 2d at 654, 559 N.Y.S.2d at 111 (emphasis in original); see M.F. Hickey Company, Inc. v. Imperial Realty Co. Inc., 65 Misc. 2d 1088, 1093, 319 N.Y.S.2d 972, 978 (Civ. Ct. N.Y. Cty. 1970) ("M.F. Hickey") ("the law is clear that an assignee takes subject to defenses and counterclaims available against its assignor that arise out of 'the same transaction'").

Indeed, New York UCC § 9-404 (formerly § 9-318) provides that "the rights of an assignee are subject to (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract." Here, Capgemini's defense that EC Manage breached its contract, along with its right of set-off of Capgemini's claim of $1.3 million against Riviera's purported $443,000 claim, require dismissal of this action as a matter of law.

At the Status Conference, Riviera made two arguments, both of which should be rejected. First, Riviera argued that because EC Manage breached after the Notice of Assignment, Capgemini may not raise the breach as a defense. However, as set forth above, because the defenses relate directly to the contract that was assigned, it is irrelevant that the defenses accrued after the assignment. See Ford Motor, M.F. Hickey and N.Y. UCC § 9-406, supra; see also Gateway National Bank of Chicago v. Saxe, Bacon & Bolan, 40 A.D.2d 653, 336 N.Y.S.2d 668, 670 (1st Dep't 1972) ("only claims arising independently of the contract between the account debtor and the assignor which accrue after notification are cut off thereby).

Second, Riviera argued that Capgemini cannot raise the defense because Capgemini allegedly did not alert Riviera of EC Manage's breach until 2-3 months after Capgemini began investigating it. This argument should be rejected because Capgemini is not a party to the Factoring Agreement and has no obligation whatsoever to Riviera (except to make any payments to Riviera as opposed to EC Manage, and there is no dispute that Capgemini did so). In any event, Riviera admits that it learned by December 2009 or January 2010 (only 2-3 months after Capgemini began to investigate EC Manage's breach) that Capgemini was not paying EC Manage and/or Riviera because EC Manage was not paying the consultants in a timely manner (or at all) (Ozenne Tr. 11-13). Further, an e-mail confirms that Julie Burns of Capgemini informed Simi Kamboj of Riviera of this on December 18, 2009. This argument is a red herring.

Respectfully submitted,

*/s/ Gerald D. Silver*

Gerald D. Silver

cc: Michael Spero, Esq. (By Facsimile (609-392-7956))

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *defendant*.
>
> SO ORDERED.
>
> 7-1-11
> DATE      VICTOR MARRERO, U.S.D.J.