# STERNS & WEINROTH

A PROFESSIONAL CORPORATION
## COUNSELLORS AT LAW

50 WEST STATE STREET
SUITE 1400
P.O. BOX 1298
TRENTON, NEW JERSEY 08607-1298
(609) 392-2100
FACSIMILE
(609) 392-7956
WWW.STERNSLAW.COM

Member, NJ, NY and GA Bars
Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney
Michael A. Spero: (609) 989-5009
e-mail: mspero@sternslaw.com

File No.: 51170-55

July 15, 2011

**Via Facsimile: 212-805-6382**
Honorable Victor Marrero
United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY 10007

Re:   Riviera Finance of Texas, Inc. vs. Capgemini U.S., LLC, 10 Civ. 5489 (VM)

Dear Judge Marrero:

We represent Riviera Finance of Texas, Inc. ("Riviera") in the above-referenced matter and write pursuant to Your Honor's request for a letter not to exceed three pages outlining our anticipated summary judgment motion. There is no disputed material fact in this matter, and as set forth in detail below, Riviera is entitled to summary judgment as a matter of law.

**I. Introduction** As an initial matter, the letter submitted by Capgemini U.S. LLC ("Capgemini") suffers from conflating two distinct concepts: recoupment and setoff. Whether an intentional attempt to argue each defense in the alternate, or unintentional, this collapsing of the two defenses confuses the facts and, as a matter of law, prevents Capgemini from an award of summary judgment.

While both defenses share the fundamental concept of the reciprocal canceling of debts, the key difference between the two is that recoupment is when the debts arise from the same transaction, while setoff is when the debts arise from different transactions. There is no doubt that Capgemini's claimed defense against paying Riviera sounds in setoff, because Capgemini's "business decision" to pay EC Manage's vendors arose separate and distinct from the underlying transaction between Capgemini and EC Manage. Deposition Transcript of Richard Hymer, ("Hymer Trans."), 62:10 and 99:10. To hold otherwise would elevate debt owed to the vendors (if any) from unsecured to secured, unjustly reward Capgemini's self-help outside the legal system, and cause a result that is contrary to well-established law.

**II. Statement of Relevant Facts** For the sake of brevity, Riviera relies on the Facts set forth by Capgemini in its letter of July 1, 2011. In addition, the following undisputed facts and timeline bear noting: (1) As a matter of practice and in the case at bar, Riviera does not (and did not) fund any

{00430171;v1}

Honorable Victor Marrero
July 15, 2011
Page 2

accounts receivable until after each is confirmed as valid by the debtor, (in this case, Capgemini). (2) Capgemini's former-CFO testified that Capgemini knew of EC Manage's failure to pay some vendors as early as September, 2009. Hymer Trans., 47:9 (3) Riviera took assignment of EC Manage's accounts receivable on October 2, 2009 and notified Capgemini of the same. The Notice specifically stated, "if there are any questions concerning your billing, or claims or offsets, affecting the accounts, please call RIVIERA . . . ." Capgemini's former-CFO testified that Capgemini accepted the assignment. (4) Capgemini confirmed the validity of each and every invoice that Riviera purchased from EC, prior to the funding, and never once informed Riviera that Capgemini had placed an account hold on payments to EC Manage (or its assignee), until all of Riviera's fundings to EC Manage had been made (after December 10, 2009). (5) Capgemini's former-CFO testified that Capgemini's unilateral decision to seek self help and pay EC Manage's vendors—notably vendors with whom Capgemini was not in privity of contract and had no legal obligation to pay—was a "business decision." That is to say, Capgemini's decision to do so was outside and completely separate from the underlying servicing contract between Capgemini and EC Manage, and cannot be considered the "same transaction" for any purposes.

### III. Legal Argument

   a. **Capgemini cannot avail itself of the defenses of setoff or recoupment in this action.**

U.C.C. 12A:9-404 governs the "rights acquired by assignee" and "claims and defenses against assignee." It provides, in relevant part, that an assignee's rights are subject to the following defenses: "(a)(1) all terms of the agreement between the account debtor [in this case, Capgemini] and assignor [EC Manage] and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and (a)(2) any other defense or claim of the account debtor [Capgemini] against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee."

Capgemini cannot claim with a straight face that it has a right to recoupment as set forth in section (a)(1), because its payments to EC Manage's vendors did not arise from the "same transaction" as its original contract with EC Manage. Rather, Capgemini made the "business decision" to exercise self help and pay those vendors.[1] Neither EC Manage, nor Riviera in EC's shoes, is responsible for this decision. Indeed, as a matter of law, Capgemini's decision to pay those vendors has no legal bearing on EC Manage or Riviera because that decision has no basis in the original Capgemini-EC Manage servicing contract.

Capgemini has attempted to circumvent the laws of secured transactions by seeking its own self help. Normally, any claims from vendors as against EC Manage would be unsecured claims. On the

---

[1] Capgemini's former-CFO testified that Capgemini actively solicited the contractors to supply Capgemini with details of alleged missing payments. He further testified that he knew of no lawsuits from any of these vendors. Capgemini suffered no losses as a result of EC Manage's failure to timely pay the vendors—they lost no clients whatsoever, which was their claimed concern. Capgemini even received a notice of assignment prepared by Capgemini from each contractor for any claim it may have had as against EC Manage. These facts further demonstrate just how "outside" these alleged claims are from the underlying Capgemini-EC Manage servicing contract.

{00430171;v1}

Honorable Victor Marrero
July 15, 2011
Page 3

contrary, Riviera's claims against Capgemini are secured claims. It is black letter law that secured claims take priority to unsecured claims. Capgemini's attempt to pay off the vendors and use those "claims" against EC (and Riviera in EC's shoes), as a right to recoupment is contrary to the law of secured transactions. Only obligations sanctioned by the legislature for special lien protection (such as motor vehicle and construction) are entitled to self help type remedies. Allowing Capgemini to adjudicate obligations owed by EC to independent contractors forces Riviera to become a de facto insurance policy for those independent contractors' potential claims.

Capgemini likewise has no right to a setoff defense because any claims it would assert against Riviera for payments to the vendors crucially, and undisputedly, arose *after* it received notice of EC Manage's assignment to Riviera. U.C.C. § 9-404(a)(2) provides for defenses sounding in setoff (that is, defenses arising from separate transactions as is the case here) only if those claims arise *before* the notice of assignment. The statute is clear on its face. Because Capgemini's payments to vendors occurred *after* it received and accepted the notice of assignment, no further argument is necessary.

    **b. Capgemini should be estopped from withholding payment on accounts that it previously confirmed as valid and owing.**

Capgemini's argument further suffers from its desire to "have it both ways." On one hand, Capgemini argues that Riviera stands in the shoes of EC Manage in this transaction and that is the end of the inquiry. On the other hand, however, Capgemini argues that it owes no duties to Riviera because it was not in privity of contract with Riviera. This should not stand. Riviera, as assignee of EC Manage, is entitled, to the covenant of good faith and fair dealing that is implied in any contract.

As discussed, *supra*, Capgemini confirmed the validity of every account receivable that Riviera purchased. Riviera relied on such representations when it purchased the accounts from EC, and had Riviera properly been notified by Capgemini as instructed on the Notice of Assignment, Riviera would not have purchased the accounts and been injured.

    **c. The cases cited by Capgemini in support of summary judgment are inapposite to the matter at bar**

The cases cited by Capgemini in support of its anticipated summary judgment motion are inapposite to the case at bar. The law relied up on by Capgemini in the Ford Motor and the M.F. Hickey Co. cases address situations where the defenses are related to the *same transaction*, which, as discussed, is not so here. Moreover, Ford Motor is not on point because it does not address U.C.C. § 9-404, which governs this dispute. The Gateway National Bank case supports Riviera, not Capgemini, for the reasons outlined above.

    Respectfully submitted,

    */s/ Michael A. Spero*
    Michael A. Spero

cc:    Gerald D. Silver, Esq. (Via Facsimile: 647-710-5260)
       Riviera Finance of Texas, Inc.

{00430171;v1}