# CHADBOURNE
# & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

**Gerald D. Silver, Esq.**
**direct tel** +1 212 408 5260
gsilver@chadbourne.com

September 23, 2011

**BY HAND**
Honorable Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY  10007

Re: **Riviera Finance of Texas, Inc. v. Capgemini U.S. LLC, 10 Civ. 5489 (VM)**

Dear Judge Marrero:

We submit this reply letter (maximum of 3 pages) in further support of Capgemini's motion for summary judgment and in opposition to Riviera's September 15, 2011 letter ("Riviera Letter") (abbreviations used in our Moving Letter dated August 26, 2011 are used herein).

This remains a simple case. As it is undisputed that EC Manage materially breached the Agreement, Capgemini is excused from any obligation to make any further payments thereunder, whether to EC Manage or its assignee Riviera. Riviera never even addresses, let alone disputes, the fact that EC Manage's material breach of the Agreement, standing alone, is a complete defense to Riviera's claims in this action. Capgemini's alternative defense of recoupment and/or setoff of Capgemini's damages ($1.3 million) against Riviera's claimed damages ($443,000) is just an additional ground for summary dismissal. In particular, and as confirmed by Riviera's Letter, the following is undisputed:

(i) Capgemini and EC Manage entered into the Agreement, pursuant to which EC Manage would staff contractors on Capgemini's client engagements;

(ii) The Agreement required EC Manage to "timely pay the wages of [contractors] from [EC Manage's] own accounts" (Agreement Art. 7);

(iii) EC Manage breached the Agreement by failing to "timely [or otherwise] pay" the contractors (see, e.g., Riviera Letter at p. 2 n.1 (admitting Riviera does not and cannot dispute this fact));

(iv) EC Manage's breach was and is material as contractors walked off and threatened to walk off Capgemini client engagements as a direct result thereof, putting Capgemini at risk of losing clients and revenue. To avoid serious risk and extensive losses to business and reputation, Capgemini needed to pay the contractors directly to retain them (despite having already paid EC Manage and/or Riviera for such contractors). (See Capgemini Mov. Letter Ex. 3 ¶¶ 9-17 and Ex. 13 (Hymer Tr. at 62-63, 66-67)). Consequently, Capgemini essentially "double-paid" contractors (although the contractors themselves were only paid once) in an amount in excess of $1.3 million;



**CHADBOURNE**
**& PARKE LLP**

Honorable Victor Marrero                    -2-                    September 23, 2011

(v)    It is black letter law that a material breach excuses performance by the non-breaching party (see Capgemini Mov. Letter at pp. 3-4 and the cases cited therein);

(vi)   Capgemini is therefore excused from making any further payments to EC Manage (indeed, as EC Manage was not paying the contractors, Capgemini was not receiving its benefit of the bargain);

(vii)  It is black letter law that Riviera, as an assignee of EC Manage under UCC § 9-404, stands in the shoes of EC Manage and is subject to the same defenses as EC Manage would be subject to under the assigned Agreement (Capgemini Mov. Letter p. 3);

(viii) Thus, just as EC Manage's material breach of the Agreement provides Capgemini with a complete defense as against EC Manage, it also provides Capgemini with a complete defense as against Riviera (indeed, Riviera concedes at p. 1 of the Riviera Letter that, as a "factor", it "assum[ed] risk of loss" under the Agreement), and therefore EC Manage's material breach excuses Capgemini from any further duty to pay EC Manage or Riviera;

(ix)   Further, New York law and UCC § 9-404 provide Capgemini with an additional defense of "offset", setoff, or recoupment against EC Manage or its assignee Riviera arising out of the same Agreement that was assigned; and

(x)    Capgemini therefore has an additional defense, whether by way of offset, setoff or recoupment, to apply its $1.3 million in damages to cancel-out Riviera's purported damages of $443,000.

Riviera's arguments are insufficient to withstand summary judgment. As an initial matter, its reliance on Systran Financial Services Corp. v. Giant Cement Holdings, Inc., 252 F. Supp. 2d 500, 504 n.4 (N.D. Ohio 2003) is grossly misplaced as that case supports Capgemini. In Systran, the account debtor moved to dismiss the factor's claim based on an arbitration clause in the original agreement, and the factor -- like here -- argued that it was not subject to the terms of the agreement (in that case, the arbitration clause). The court found that the factor is indeed bound by terms of the original agreement and "assumes the risk of loss" under that agreement. Systran, 252 F. Supp. 2d at 505-06 ("[a]n arbitration provision would be of no value if a party could escape the effect of such clause by assigning a claim subject to arbitration between the original parties to a third party").

Riviera argues that Capgemini has "conflated" the defenses of setoff and recoupment and that this is "pivotal". First of all, this argument has nothing to do with Capgemini's primary defense, i.e., that EC Manage's material breach of the Agreement excuses Capgemini's further performance as a matter of law, without resort to the defenses of setoff and/or recoupment, and fails for this reason alone.

Second, whether Capgemini terms its second defense as setoff or recoupment, which terms are used interchangeably under New York law (which governs herein (Agreement Art.

**CHADBOURNE**
   **& PARKE** LLP

Honorable Victor Marrero             -3-             September 23, 2011

13G)), McMahon v. New York State Electric and Gas Corporation, 129 F.3d 93, 96 (2d Cir. 1997) ("distinction between a recoupment and a setoff retains little significance under the modern rules"), Capgemini's $1.3 million in damages arises directly out of EC Manage's breach of the Agreement, i.e., EC Manage's failure to timely pay contractors. As Capgemini's damages arose out of the same transaction (i.e., the contract assigned), Capgemini may apply its $1.3 million in damages against Riveria's claimed $443,000 in damages. (See Capgemini Mov. Letter pp. 3 and 5; UCC § 9-404(a) and (b)).

Riviera's claim that Capgemini's damages arose out of a separate agreement, namely the December 2, 2009 letter agreement, misses the mark. The December 2, 2009 letter agreement merely permitted Capgemini to engage EC Manage's contractors through a different staffing company (Capgemini Mov. Letter Ex. 7). Although, in that letter, EC Manage also reaffirmed that it had failed to timely pay the contractors and that it would do so, this did not change or modify EC Manage's obligations in this regard as set forth in the Agreement. Thus, Capgemini's damages against EC Manage arise directly and solely out of EC Manage's breach of the Agreement.

Third, Riviera's claim that Capgemini had no legal duty to directly pay the contractors but rather did so as "self-help" is inaccurate and, in any event, irrelevant. Given EC Manage's breach, Capgemini could not be expected to sit back, do nothing and wait until its contractors walked away and Capgemini lost clients and millions of dollars in business. To the contrary, Capgemini had a legal duty to mitigate its damages. Technest Holdings, Inc. v. Deer Creek Fund LLC, 2008 WL 3449941, *18 (S.D.N.Y. August 12, 2008) ("[a] party injured by a breach of contract has a duty to mitigate its damages by making reasonable efforts to minimize the harm flowing from the injury"). Further, Riviera takes the testimony of Hymer out of context when Riviera states that Capgemini merely made a "business decision" (see Hymer Tr. 99 ("I would say it was a business decision made with legal advice")).

With respect to the cases cited at pp. 4-5 of Riviera's Letter, they relate solely to scenarios where the account debtor attempts to assert an affirmative claim against the assignee for recovery of damages --- as opposed to, like here, merely applying damages suffered as a defense to cancel-out damages sought. Riviera's extensive discussion of such cases is therefore inapplicable. See Novartis Animal Health US, Inc. v. Earle Palmer Brown, LLC, 424 F. Supp.2d 1358, 1363-64 (N.D. Ga. 2006) (UCC § 9-318 [predecessor to UCC 9-404) does not "create an affirmative right of action by an account debtor against an assignee"); Michelin Tires (Canada) Ltd. V. First National Bank of Boston, 666 F.2d 673, 679 (1st Cir. 1981) (no affirmative suit against assignee); In re Mortgages Ltd. v. Maness, 405 B.R. 669, 673-74 (Bankr. D. Arizona 2009) (dismissing affirmative claims against assignees/investors). Moreover, in Novartis, unlike here, the underlying agreement did not require the assignor to pay its vendors.

                                           Respectfully submitted,

                                           Gerald D. Silver



CHADBOURNE
& PARKE LLP

Honorable Victor Marrero                -4-                      September 23, 2011

cc:    Michael Spero, Esq. (via E-Mail and Federal Express)