# STERNS & WEINROTH

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
50 WEST STATE STREET
SUITE 1400
P.O. BOX 1298
TRENTON, NEW JERSEY 08607-1298
(609) 392-2100
FACSIMILE
(609) 392-7956
WWW.STERNSLAW.COM

Member, NJ, NY and GA Bars
Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney
Michael A. Spero: (609) 989-5009
e-mail: mspero@sternslaw.com

File No.: 51170-55

October 5, 2011

**Via U.S. Mail and Facsimile: 212-805-6382**
Honorable Victor Marrero
United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY 10007

Re:   Riviera Finance of Texas, Inc. vs. Capgemini U.S., LLC, 10 Civ. 5489 (VM)

Dear Judge Marrero:

We represent Riviera Finance of Texas, Inc. ("Riviera") and write this reply letter brief in further support of Riviera's motion for summary judgment.

Capgemini's argument suffers from trying to have it both ways with respect to its relationship with Riviera. On one hand, Capgemini strenuously argues that Riviera stands in the shoes of EC Manage ("EC"), and that because EC is alleged to have breached the contract between Capgemini and EC, Capgemini need not perform any further by paying EC, or Riviera in EC's shoes. Thus with respect to its defenses against paying Riviera, Capgemini argues that Riviera stands squarely in the shoes of EC with no greater rights or defenses than EC would have.[1] Yet when it comes to Capgemini's defenses against paying Riviera, Capgemini conveniently argues that it never was in privity of contract with Riviera and therefore owed Riviera no duty. Capgemini asserts this lack-of-privity defense in response to Riviera's argument that <u>Capgemini knew of the problem with EC's payments to the contractors, yet does not dispute that it (a) verified the validity of each and every invoice that Riviera purchased from EC, prior to the funding, and (b) never once informed Riviera that Capgemini knew of the alleged problems with EC's payment of contractors, until all of Riviera's fundings to EC Manage had been made.</u>

---

[1] The glaring fallacy of this argument is that Riviera was not a party to the contract between EC and Capgemini, and Capgemini's obligation to pay Riviera arose from a separate contract—the factoring agreement, which Capgemini does not dispute receiving notice of <u>prior</u> to its decision to stop payment to EC/ Riviera. It bears repeating that the timing of this is crucial under the governing law-- U.C.C. 12A:9-404(a)(2).

Honorable Victor Marrero
October 5, 2011
Page 2

    If Riviera indeed stands in the shoes of EC, as Capgemini so strongly argues, then Capgemini owed Riviera this duty and should have informed Riviera of the problems with EC's account. In short, this Court should not permit Capgemini to have it both ways with respect to its relationship with Riviera. If the parties were not in privity of contract, then Capgemini cannot rely on EC's alleged breach as its defense against paying Riviera. If the parties were in privity of contract or Riviera does stand in EC's shoes for all purposes, then Capgemini owed Riviera a duty to inform Riviera of the alleged problems with EC's payment to the contractors.

    Regardless of the contractual relationship between the parties, Capgemini should be estopped from disclaiming payment to Riviera on the basis of Capgemini's claimed lack of duty to Riviera, because Riviera relied on Capgemini's repeated verifying the validity of each of EC's accounts prompting Riviera to agree to fund those accounts. Indeed, had Capgemini not separately verified the validity of EC's accounts, Riviera would not have funded each of them. In a sub-chapter entitled, "Estoppel Created by Account Debtor's Verification of the Account," the leading treatise on factoring explains that a "verification of this nature creates a common law estoppel in favor of the factor [Riviera] which, generally speaking, prevents the account debtor [Capgemini] from raising defenses to payment of the assigned account." David B. Tatge, David Flaxman, Jeremy B. Tatge, American Factoring Law 494 (BNA Books 2009). Similarly, while not directly on point to our case, in Fidelity Funding of California, Inc. v. Reinhold, 79 F. Supp. 2d 110 (E.D.N.Y 1997), the Eastern District found that "false telephonic verifications to the factor by certain account debtor defendants . . . created liability for those account debtors who falsely authenticated the invoices." Tatge, supra, 2011 supplement, 102-03.

    To prove an equitable estoppel, "the factor must establish a material misrepresentation by the account debtor, the factor's reasonable reliance thereon, and resulting damage to the factor." Tatge, supra, 494. Riviera has firmly established each element with respect to Capgemini's having verified the accounts, prior to Riviera's decision to fund these accounts, and Riviera's reliance thereon. Accordingly because it verified the accounts, Capgemini is estopped from defending against the payments owed to Riviera and summary judgment should be granted in favor of Riviera.

    In sum, Capgemini is responsible for creating the situation that the parties find themselves in. Had Capgemini acted in good faith and informed Riviera of the alleged issues with EC's performance when Capgemini knew it, or had Capgemini not verified the accounts, Riviera would not have funded EC's accounts, and Capgemini would not have been faced with its "business decision" to pay the contractors directly. Instead, Capgemini knowingly concealed this information from Riviera and verified the accounts, causing Riviera to rely to its detriment on Capgemini's misrepresentations and fund EC's accounts. This Court should not permit Capgemini to rely on its own knowing misrepresentations to Riviera as a means of escaping paying monies owed to Riviera. Simply put, Capgemini should not be permitted to hide behind and profit from its misrepresentations, upon which Riviera relied.

                                                                          Respectfully submitted,

                                                                          Michael A. Spero

cc:    Gerald D. Silver, Esq. (Via Facsimile: 647-710-5260)
        Riviera Finance of Texas, Inc.

Honorable Victor Marrero
October 5, 2011
Page 3

gcc:   ADobin
       JRCohen

{00453131;v1}3