**CHADBOURNE  
& PARKE LLP**

30 Rockefeller Plaza, New York, NY 10112  
tel (212) 408-5100  fax (212) 541-5369

Gerald D. Silver, Esq.  
direct tel +1 212 408 5260  
gsilver@chadbourne.com

August 26, 2011

**BY HAND**

Honorable Victor Marrero  
Daniel Patrick Moynihan  
United States Courthouse  
500 Pearl Street, Courtroom 20B  
New York, NY 10007

      Re:    <u>Riviera Finance of Texas, Inc. v. Capgemini U.S. LLC, 10 Civ. 5489 (VM)</u>

Dear Judge Marrero:

      We represent defendant Capgemini U.S. LLC ("Capgemini") in the above-referenced matter. Pursuant to your Honor's Order at the Status Teleconference held on July 26, 2011, Capgemini submits this letter (maximum of 5 pages) in support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment in Capgemini's favor and against plaintiff Riviera Finance of Texas, Inc. ("Riviera") dismissing this action.

**I.**    **Introduction.** Riviera seeks to recover amounts it claims are due under an Agency Agreement dated October 1, 2007 between Capgemini and EC Manage, Inc. ("EC Manage"), as to which Riviera claims it is the assignee (the "Agreement" at Ex. 1 hereto). However, EC Manage has indisputably breached the Agreement, causing damages to Capgemini in excess of $1.3 million. Indeed, Capgemini had commenced a prior action against EC Manage in this District, <u>Capgemini U.S. LLC v. EC Manage, Inc.</u>, 10 Civ. 2486 (GBD)(HBP) (the "EC Manage Action"), in which the court has granted Capgemini's motion for a default judgment against EC Manage arising from such breach. (See Order at Ex. 2 hereto; Affidavit of Arvind Kumar, sworn to on November 1, 2010 ("Kumar Aff.") at Ex. 3 hereto at ¶ 15).

      It is black letter New York law that Riviera, as assignee of EC Manage, stands in the shoes of EC Manage and has no more rights in the Agreement than EC Manage would. EC Manage materially breached the Agreement, causing damages to Capgemini. This breach is well established by Capgemini witnesses, documents and EC Manage's admissions. Riviera does not and cannot dispute that this breach occurred because, among other reasons, it has no personal knowledge as to whether EC Manage performed or not (see Deposition of Kathleen Ozenne, Riviera's corporate representative ("Ozenne Tr."), Ex. 4 hereto, pp. 14-15, 35, 39, 41-45, 47, 50).

      Summary judgment should be awarded because (i) EC Manage's material breach of the Agreement discharges Capgemini of any further obligation under the Agreement, and (ii) Capgemini has a right of set-off that well exceeds the damages claimed by Riviera in this action.



# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero					-2-						August 26, 2011

**II. Brief Summary Of Relevant Undisputed Facts.** Pursuant to the Agreement, EC Manage would provide contractors to Capgemini to provide technology consulting services on Capgemini's client engagements. Capgemini would pay EC Manage for the time and expenses of the contractors (Agreement Art. 3) and, in turn, EC Manage was required to "timely pay the wages of Contractors from [EC Manage's] own accounts" (Agreement Art. 7).

On or about October 2, 2009, EC Manage agreed to factor or assign to Riviera certain of its accounts receivable in connection with the services it provided to Capgemini (the "Factoring Agreement" at Ex. 5). Riviera and EC Manage sent Capgemini a Notice of Assignment effective for all payments made on or after October 2, 2009, pursuant to the Uniform Commercial Code ("UCC") (the "Notice of Assignment" at Ex. 6 hereto). The Notice of Assignment provides that "payments on all invoices from EC-Manage, Inc. must be made **PAYABLE AND MAILED DIRECTLY TO RIVIERA FINANCE**" (Ex. 6).

Capgemini began making payments on EC Manage invoices directly to Riviera. Thereafter, EC Manage's contractors began complaining to Capgemini management and clients that they were not receiving payments from EC Manage for services the contractors rendered -- and for which Capgemini had paid EC Manage and/or Riviera -- dating as far back as June 2009. Capgemini thereafter began investigating the issue. EC Manage repeatedly told Capgemini it was and/or would be paying the contractors. Accordingly, Capgemini continued to make payments to Riviera. In December 2009, Capgemini continued to hear complaints from the contractors that they were not being paid by EC Manage. (See generally Kumar Aff. ¶¶ 9-15; Deposition of Rick Hymer, Capgemini's CFO ("Hymer Tr."), Ex. 13 hereto, pp. 46-47).

Accordingly, Capgemini insisted that EC Manage enter into a letter agreement dated December 2, 2009, wherein EC Manage, inter alia, acknowledged its failure to make timely payments to the contractors and agreed to do so: "Due to EC Manage's failure to make prompt payment to some of Capgemini's resources, EC Manage agrees to release the resources listed . . . EC Manage agrees that any monies paid by Capgemini to EC Manage for resources on Capgemini assignments will be paid in accordance with the terms of the resources' agreements with EC Manage" (Ex. 7 (emphasis added)). Accordingly Capgemini continued to make payments to Riviera into mid-December (see, e.g., Kumar Aff. at Ex. E at CG00022).

However, contractors continued to complain to Capgemini's clients that they were not being paid by EC Manage. These complaints endangered Capgemini's client relationships and reputation. Some contractors threatened to walk away from Capgemini's client engagements, and at least one consultant abruptly ceased providing services, causing clients to begin inquiring about the situation. The loss of these individuals and their respective knowledge would have been extremely detrimental to Capgemini and its clients. (See Kumar Aff. ¶¶ 9-15; Hymer Tr. 62). Thus, Capgemini had little choice but to begin mitigating its damages by undertaking a process to pay former EC Manage contractors who were working on Capgemini clients directly for their services -- despite the fact that Capgemini had already paid EC Manage and/or Riviera for such contractors' services. To date, Capgemini has expended over $1.3 million. Id.

# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero                -3-                          August 26, 2011

     Hence, in December 2009, Capgemini made the decision to cease making payments to EC Manage and/or Riviera (Hymer Tr. 66-67). On December 18, 2009, Julie Burns ("Burns") of Capgemini specifically advised Simi Kamboj ("Kamboj"), Riviera's account executive on the EC Manage account, that Capgemini was ceasing making any further payments to Riviera because of EC Manage's failure to pay the contractors and that "Capgemini is working with ECM to ensure they pay our contractors" (see Burns e-mail December 18, 2009 at Ex. 8). This is confirmed by an e-mail from Rabi Chakraborty of EC Manage stating that on December 18, 2009 Rivera told him that "Julie Burns informed our lender that EC Manage has defaulted in paying its vendors/contractors and therefore Capgemini took acted [sic] to pull the time sheets and cancel the contracts" (see Ex. 9 hereto; see also Ozenne Tr. 12-13).

     Capgemini subsequently commenced the EC Manage Action. Thereafter, Riviera commenced this action seeking to recover damages in the amount of $442,855.42 (Ex. 10).

## III. Summary Judgment Should Be Awarded Dismissing Riviera's Claims.

     "[A]n assignee is subject to any claims and defenses arising under an assigned contract." Ford Motor Credit Company v. Sofia, 147 Misc. 2d 651, 654, 559 N.Y.S.2d 109, 111 (Civ. Ct. Kings Cty. 1990) ("Ford Motor"). "[I]t is established that where the claim against the assignee is related to the transaction out of which the assignment arose and even if the claim accrues after notice of the assignment, a defendant may interpose it against the assignee to the extent of an offset." Ford Motor, 147 Misc. 2d at 654, 559 N.Y.S.2d at 111 (addressing UCC § 9-318, which is now UCC § 9-404); see M.F. Hickey Company, Inc. v. Imperial Realty Co. Inc., 65 Misc. 2d 1088, 1093, 319 N.Y.S.2d 972, 978 (Civ. Ct. N.Y. Cty. 1970) ("M.F. Hickey") ("the law is clear that an assignee takes subject to defenses and counterclaims available against its assignor that arise out of 'the same transaction'").

     Indeed, New York UCC § 9-404 (formerly § 9-318) provides that "the rights of an assignee are subject to (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract." Here, Capgemini's defense that EC Manage breached its contract, along with its right of set-off of Capgemini's claim of $1.3 million against Riviera's purported $443,000 claim, require dismissal of this action as a matter of law.

### A.  EC Manage's Material Breach Bars Riviera's Claims.

     "[W]here a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation." Jafari v. Wally Findlay Galleries, 741 F. Supp. 64, 68 (S.D.N.Y. 1990) (when plaintiff failed to make timely payments for painting, defendant no longer bound to deliver the painting); Net2globe International, Inc. v. Time Warner Telecom of New York, 273 F. Supp. 2d 436, 457 (S.D.N.Y. 2003) (Marrero, J.) ("when [plaintiff] refused to pay any of [defendant's] invoices [] this nonpayment constituted a breach of its obligations . . . [plaintiff] cannot now claim relief either in the form of specific performance or damages"); Grace v. Nappa, 46 N.Y.2d 560, 567, 415 N.Y.S.2d 793, 797 (1979)

CHADBOURNE
& PARKE LLP

Honorable Victor Marrero                -4-                        August 26, 2011

("failure to provide the certificate was thus a material breach of the contract, excusing plaintiff's performance").

Here, it is undisputed that EC Manage failed to timely pay the contractors staffed on Capgemini engagements, despite the fact that Capgemini paid Riviera and/or EC Manage for such contractors' services (Kumar Aff. ¶ 9-14; Hymer Tr. 78; Exs. 7 and 11 (EC Manage admitting it failed to pay contractors over $2.5 million); Ozenne Tr. 14-15, 23, 29, 31, 39, 42-46). EC Manage's failure to pay is a material breach. Jafari, 741 F. Supp. at 67 ("[t]he failure to tender payment is a material breach of a contract"). Indeed, EC Manage's breach caused substantial turmoil for Capgemini on its client engagements, with unpaid contractors complaining to Capgemini's clients and threatening to walk off the engagements (Kumar Aff. 9-14; Hymer Tr. 62, 99). As a result, Capgemini needed to pay these contractors directly despite having already paid Riviera and/or EC Manage for such contractors' services, in order for Capgemini to attempt to keep the contractors at work and to satisfy its clients. Capgemini incurred damages of over $1.3 million and EC Manage failed to pay the contractors over $2.5 million (and hence Capgemini failed to receive its benefit of the bargain in this amount). Hence, EC Manage's breach discharges any further performance by Capgemini.

In Riviera's letter to the Court dated July 15, 2011 ("July Letter" at Ex. 12 hereto), Riviera did not dispute that EC Manage materially breached the Agreement. Rather, Riviera argued that Capgemini's defense did not arise out of the "same transaction" that gave rise to the Agreement and therefore Capgemini may not assert this defense against Riviera.

However, it is well-settled that a defense that relates directly to the contract that was assigned may be asserted against the assignee. See Ford Motor, M.F. Hickey and N.Y. UCC § 9-404, supra. Only claims that have nothing to do with the contract assigned, such as if EC Manage and Capgemini had a separate agreement that was breached, cannot be asserted against the assignee. See Gateway National Bank of Chicago v. Saxe, Bacon & Bolan, 40 A.D.2d 653, 336 N.Y.S.2d 668, 670 (1st Dep't 1972) ("only claims arising independently of the contract between the account debtor and the assignor which accrue after notification are cut off thereby").

Here, EC Manage breached a specific provision of the subject Agreement that was assigned, namely its obligation to timely pay the contractors. Hence, Capgemini's defense relates to the contract assigned, and therefore the very "same transaction" (Hymer Tr. 78 ("we did not pay ECM [or Riviera] because it became to clear to us that they had breached their contract. They were not paying the contractors"). Capgemini mitigated its damages due to the breach of the Agreement itself by paying certain of the contractors directly (Hymer Tr. 99 ("we had projects at risk with EC Manage not paying our contractors. And we couldn't accept the risk that that was creating on our projects without taking action").

B.    **Riviera's Claims Are Barred By Capgemini's Right Of Setoff.**

As set forth above, due to EC Manage's breach, Capgemini incurred damages of in excess of $1.3 million, which far exceeds the $443,000 claimed by Riviera. Capgemini is entitled to a

# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero    -5-    August 26, 2011

set-off and therefore owes no further monies to Riviera. Ford Motor, 147 Misc. 2d at 654, 559 N.Y.S.2d at 111 ("where the claim against the assignee is related to the transaction out of which the assignment arose and even if the claim accrues after notice of the assignment, a <u>defendant may interpose it against the assignee to the extent of an offset</u>") (emphasis added).

### C. **Riviera's Other Legal Arguments Fail.**

Riviera argues that Capgemini should be required to pay Riviera despite EC Manage's undisputed material breach of the Agreement because Capgemini allegedly did not timely alert Riviera that EC Manage was breaching the Agreement. However, Capgemini owed no duty to Riviera. Capgemini is not a party to the Factoring Agreement or the Notice of Assignment, and had no obligation thereunder other than to make any payments on EC Manage invoices to Riviera as opposed to EC Manage and there is no dispute that it did so.

Moreover, it is undisputed that, as set forth above, Capgemini continued making payments to Riviera on behalf of EC Manage well into December as it was investigating the matter (EC Manage kept telling Capgemini that it was or would be paying the contractors) (Hymer Tr. 46-47; see pp. 2-3, supra). Within days after Capgemini determined that EC Manage had breached and would or could not cure, and Capgemini made the decision to cease further payment (mid-December 2009), it told Riviera (see Exs. 8-9, Ozenne Tr. 12-13).

Regardless, Riviera's attempt to formulate an equitable estoppel argument by claiming Capgemini "confirmed the validity of every account receivable that Riviera purchased" (Ex. 12 at 2) is misleading. Riviera did not consult with Capgemini prior to entering into the Factoring Agreement. Rather, Riviera is merely claiming that, after sending the Notice of Assignment, Capgemini, through a computer system or otherwise, acknowledged that EC Manage's contractors worked the hours billed and invoiced by EC Manage (Hymer Tr. 96-97). However, EC Manage's breach does not relate to whether the contractors worked the hours billed but rather the fact that EC Manage failed to timely pay the contractors despite being paid by Capgemini. Thus, any estoppel claim fails because Capgemini did not make any false statement and Riviera did not reasonably rely on any false statement. Further, it would be inequitable to require Capgemini to pay Riviera given EC Manage's material breach, Riviera's failure to monitor, prevent or cure that breach despite as assignee assuming the risk of any such breach, Riviera's failure to pursue its rights against EC Manage under the Factoring Agreement, and the fact that Capgemini has already suffered damages in excess of $1.3 million as a result of the breach. Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc., 404 F.2d 566, 607 (2d Cir. 2005) ("[e]quitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought").

Respectfully submitted,

Gerald D. Silver

**CHADBOURNE & PARKE LLP**

Honorable Victor Marrero                      -6-                      August 26, 2011

cc:     Michael Spero, Esq. (via E-Mail and Federal Express)