# CHADBOURNE & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

Gerald D. Silver, Esq.
direct tel +1 212 408 5260
gsilver@chadbourne.com

October 18, 2011

**BY FACSIMILE**

Honorable Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY 10007

Re:  **Riviera Finance of Texas, Inc. v. Capgemini U.S. LLC, 10 Civ. 5489 (VM)**

Dear Judge Marrero:

We represent defendant Capgemini in the above-referenced action. In accordance with Your Honor's Order dated October 7, 2011, we are writing to address Riveria's estoppel argument raised in its reply letter dated October 5, 2011 ("October 5 Letter") (abbreviations used in Capgemini's prior letters are used herein).

Riviera does not dispute that, under well-settled New York law, Riviera stands in the shoes of EC Manage and any defense that may be asserted by Capgemini against EC Manage may similarly be asserted against Riviera. However, Riviera argues that Capgemini should be estopped from asserting any defenses against Riviera because Capgemini "repeated[ly] verif[ied] the validity of EC's accounts prompting Riviera to agree to fund those accounts" (October 5 Letter at p. 2). Riviera's argument fails, for numerous reasons.

First, Riviera does not cite to any portion of the record supported this assertion. Therefore, Riviera cannot raise a material, genuine issue of fact on this point, and this bald allegation is insufficient to withstand summary judgment. Fed. R. Civ. P. 56(c)(1).

Second, Riviera's statement is simply inaccurate. There is nothing in the record demonstrating that Riviera checked with Capgemini prior to taking assignment of EC Manage's receivables, told Capgemini it would be funding EC Manage, asked if Capgemini had any potential defenses to any claim that may be asserted by EC Manage or Riviera, or even asked Capgemini to "verify the validity" of EC Manage's accounts. To the contrary, EC Manage and Riviera merely sent Capgemini a Notice of Assignment after the assignment occurred, to which Capgemini adhered (Capgemini Moving Letter at Ex. 6).

Capgemini did not "verify the validity" of EC Manage's accounts. At most, Riviera had access to a system put in place by EC Manage, whereby EC Manage's contractors would log hours worked and Capgemini would review and confirm that such hours were indeed worked (see Hymer Tr. 96-97 (Capgemini Moving Letter at Ex. 12)). However, EC Manage's breach



# CHADBOURNE
# & PARKE LLP

Honorable Victor Marrero                    -2-                    October 18, 2011

does not relate to whether contractors worked the hours billed, but rather the fact that EC Manage failed to timely pay the contractors.

Third, as made clear by the preceding paragraph, it is undisputed that there was no material misrepresentation made by Capgemini, which Riviera concedes is a requisite to an estoppel claim (October 5 Letter at p. 2). To the contrary, and as set forth in Capgemini's Moving Letter at pp. 2-3, Capgemini specifically advised Riviera of EC Manage's breach in December 2009, as soon as Capgemini became aware that EC Manage was not and would not be paying the contractors and Capgemini made the decision to cease making further payments to EC Manage/Riviera. Up until that point, Capgemini had continued making payments to EC Manage/Riviera (Moving Letter at p. 2 and Ex. E at, e.g., CG00022).

Fourth, the authorities relied upon by Riviera in its October 5 Letter do not support Riviera but rather demonstrate why summary judgment in Capgemini's favor is appropriate. In Fidelity Funding of California v. Reinhold, 79 F. Supp. 2d 110 (E.D.N.Y 1997), the account debtor and assignor were in cahoots in a larger scheme to defraud the factor, and misrepresented the existence of invoices that were phony. That clearly did not occur here.

Further, the factoring treatise cited by Riviera states that for there to be an estoppel created by an account debtor's "verification of an account", the factor must (i) first send a "Notice of Purchase" to the account debtor stating that to induce the factor to provide funding to the assignor, it is asking for certain representations from the account debtor, and (ii) in response to the Notice of Purchase, the account debtor must then represent, warrant and acknowledge that the invoices are "absolutely due and payable in the amount billed, without defense, offset, or counterclaim." See Tatge, Flaxman, Tatge, American Factoring Law, p. 493 (BNA Books 2009) (emphasis added). None of the foregoing occurred here, which further highlights why there can be no estoppel as a matter of law.

                                                            Respectfully submitted,

                                                            Gerald D. Silver

cc:   Michael Spero, Esq. (via E-Mail and Federal Express)